UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY REYNOLDS,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 21-cv-03029-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Plaintiff Larry Reynolds accuses Google LLC ("Google") of unlawfully making available for streaming and downloading songs for which he holds a valid copyright, in violation of 17 U.S.C. §§ 106 and 501. Google now moves for summary judgment, Dkt. 43, and has proffered evidence showing it properly licensed each song before distributing it. Reynolds has failed to provide any evidence that Google did not license each song, or that Google's use exceeded the scope of the licenses. For all the foregoing reasons, summary judgment is therefore granted to Google.[1]

## II. BACKGROUND

Reynolds is a musician from Louisiana who has produced a number of songs and albums

---

[1] Google also filed two administrative motions to file under seal. Dkts. 42, 48. Good cause appearing, the motions to file under seal are granted.

under the stage name L.P. Reynolds. In his complaint, he lists several copyrighted albums: L.P. Reynolds Supersaint, L.P. Reynolds Christmas, L.P. Reynolds God Gave Love Today, L.P. Reynolds Something New, L.P. Reynolds Bride for Doctor Levinstein, L.P. Reynolds Tennessee Fever, L.P. Reynolds and the Argonauts, L.P. Reynolds If You Don't Believe. Second Amended Complaint ("SAC"), Dkt. 1, pgs. 17-24. Reynolds contends Google has engaged in a "digital music administrative campaign to reproduce and distribute" approximately seventy of his songs without his authorization.[2] SAC ¶¶ 10, 17. Specifically, he avers Google did not file with him or the United States Copyright Office a Notice of Intent ("NOI") to reproduce his works and that Google has not paid, or has underpaid, royalties owed to him. SAC ¶ 11. He does acknowledge, however, that he has received some royalty payments stemming from Google's distribution of his works. SAC ¶¶ 14-15.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of

---

[2] Reynolds brought suit against Apple, Inc. and Google in the same lawsuit, and the Court previously severed the two defendants. *See* Dkt. 2. Apple was previously granted summary judgment. *See Reynolds v. Apple Inc.*, No. 19-CV-05440-RS, 2021 WL 4033024 (N.D. Cal. Sept. 3, 2021).

1  proof at trial. *Id.* at 322-23.

2  To preclude the entry of summary judgment, the non-moving party must bring forth
3  material facts, i.e., "facts that might affect the outcome of the suit under the governing law[.]"
4  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party "must do more
5  than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*
6  *Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The trial court must "draw all
7  justifiable inferences in favor of the nonmoving party, including questions of credibility and of the
8  weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496,
9  520 (1991).

## IV. DISCUSSION

To establish a claim for copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). However, "[t]he existence of a license creates an affirmative defense to a claim of copyright infringement." *Worldwide Church of God v. Phila. Church of God, Inc*., 227 F.3d 1110, 1114 (9th Cir. 2000).

The distribution of any song implicates two separate copyrights, one in the musical composition and the other in the sound recording. The musical composition copyright, also referred to as a mechanical license, "protects the generic sound that would necessarily result from any performance of the piece." *Newton v. Diamond*, 204 F. Supp. 2d 1244, 1240 (C.D. Cal. 2002), *aff'd*, 349 F.3d 591 (9th Cir. 2003), *amended and superseded on denial of reh'g and aff'd*, 388 F.3d 1189 (9th Cir. 2004). The sound recording copyright shields "the sound produced by the performer's rendition of the musical work." *Id.* at 1249-50. A distributing entity must obtain a license for each of these copyrights to distribute a sound recording lawfully.

Google has put forth uncontroverted evidence that it obtained both sound recording and mechanical licenses for Reynolds' work, and thus has an affirmative defense to Reynolds' claim of copyright infringement. First, Google obtained licenses to Reynolds' sound recordings through CD Baby. CD Baby is an online purveyor of independent music that offers digital music

distribution services. *See* Declaration of Donna Black ("Black Decl."), Dkt. 43-2 ¶ 4. When artists opt into CD Baby's service, they can authorize CD Baby to license their music to other streaming and downloading services, including Google's now-defunct streaming service, Google Play Music. Google has provided evidence that Reynolds authorized CD Baby to license and distribute his work. In a declaration, CD Baby employee Donna Black states that Reynolds signed CD Baby's agreement on multiple occasions, and the agreement authorized CD Baby to distribute and license musical works he submitted to CD Baby. Black Decl. ¶¶ 5-7; *see also* Dkts. 43-3, 43-4, and 43-5 (Exs. 1-3 to Black Decl.). Black's declaration also states that the licenses Google secured were in effect each time one of Reynolds' works was downloaded or streamed via the Google platform, and that CD Baby paid Reynolds royalty amounts due to him for Google's use of the works. Black Decl. ¶¶ 8-9. Google has also submitted an exhibit documenting payments made to Reynolds for Google's distribution of his works. *See* Dkt. 42-12. There is no genuine dispute of material fact as to the validity of the sound recording licenses, or that they were in effect for the entirety of the relevant time period.

Second, Google maintained mechanical licenses through the Harry Fox Agency ("HFA"). HFA provides rights management so that digital music providers, such as Google, can obtain mechanical licenses. Declaration of John Raso ("Raso Decl."), Dkt. 43-9 ¶ 4.  Mr. Reynolds, acting on behalf of his publisher, L.P. Reynolds Music and Film, opted into the Google Play Music Services Direct Licensing Agreement ("Google Agreement") via a click-through process hosted by HFA on September 3, 2014. Raso Decl. ¶ 5. The Google Agreement granted Google mechanical licenses for Reynolds' music. *See* Declaration of Jennifer Rosen ("Rosen Decl."), Dkt. 43-14 ¶ 10. Reynolds opted into the Google Agreement via the HFA portal again on January 4, 2016. Raso Decl. ¶ 6. Further, when presented with the opportunity to opt-out of the Google Agreement in 2018, Reynolds failed to do so. Raso Decl. ¶ 7-8. Further, Google pays royalties to HFA, which then distributes them to publishers. Rosen Decl. at ¶ 10. Reynolds' own complaint acknowledges he received royalties from HFA for Google's use. SAC ¶¶ 14-15. Google has demonstrated that its licenses were in effect for the entirety of the relevant period, and that HFA

paid Reynolds royalties due for Google's distribution of the works. There is no genuine dispute of material fact as to the validity of the mechanical licenses, or that they were in effect for the entirety of the relevant time period.

Reynolds provides arguments in opposition to Google's motion and proffered evidence. Reynolds generally states that the declarations and exhibits filed by Google in support of its motion are untrue, *see* Statement, Dkt. 45 at pg. 3, but Reynolds provides no evidence to support this assertion. The only exhibits Reynolds attached to his statement in opposition to Google's motion for summary judgment are printouts of federal statutes. Additionally, as Google describes in its reply, Reynolds failed to participate in the discovery process, and produced no documents, submitted no responses to Requests for Production or Requests for Admission, and did not appear for his deposition. *See* Reply in Support of Motion for Summary Judgment, Dkt. 49 at pg. 6.

Further, even though Reynolds does not dispute that he digitally agreed to the terms of the licenses, he argues he needed to provide a handwritten signature to make them valid. Reynolds, though, provides no support for this argument, which is contrary to federal law establishing a general rule of validity for electronic signatures. *See* 15 U.S.C. § 7001 (stating that unless provided otherwise, "a signature . . . may not be denied legal effect, validity, or enforceability solely because it is in electronic form").

Reynolds also asserts that Google exceeded the scope of the licenses. Faced with licenses whose existence are not in dispute, it is Reynolds' burden to show Google exceeded their scope. *See Netbula, LLC v. Bindview Development Corp.*, 516 F. Supp. 2d 1137, 1151 (N.D. Cal. 2007) ("Where, the existence of a license is not in dispute, and only the scope of the license is at issue, the copyright owner bears the burden of proving that the defendant's copying was unauthorized."). Reynolds has failed to bring forth any facts to establish a basis for his argument that Google exceeded the scope of the licenses. *See Anderson*, 477 U.S. at 248.

Finally, in his Second Amended Complaint Reynolds also asserts Google was required to provide him a NOI prior to distributing his work, an argument he repeats in his opposition. An NOI is only necessary for a compulsory license, though, and Google's licenses were negotiated

licenses. *See 24/7 Recs., Inc. v. Sony Music Ent., Inc.,* 429 F.3d 39, 42 (2d Cir. 2005) ("In order ... to avoid copyright infringement . . . [a party must] obtain either a negotiated license . . . or a compulsory license[.]"). *Reynolds v. Apple Inc.*, No. 19-CV-05440-RS, 2021 WL 4033024, at *3 (N.D. Cal. Sept. 3, 2021) (explaining that when an entity has obtained a negotiated license, the entity is "not obligated to file or serve NOIs, which are only required when an entity seeks a compulsory license under section 115 of the Copyright Act").

Even when "draw[ing] all justifiable inferences in favor of [Reynolds]," *Masson,* 501 U.S. at 520, granting Google's motion for summary judgment is appropriate because Reynolds has failed to put forth any evidence in opposition to Google's motion and in support of his claim. The motion for summary judgment is therefore granted.

## V. CONCLUSION

For all the foregoing reasons, Google's motion for summary judgment is granted.

**IT IS SO ORDERED**.

Dated: February 2, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
CASE NO. 21-cv-03029-RS

6